The next case today is Matthew J. White v. Hewlett Packard Enterprise Company, appeal number 191696. Attorney Quinlan. Thank you. May it please the court. My name is Danielle Quinlan and I am here today representing Matthew White, the appellant in this case. May I reserve three minutes for rebuttal? Yes. So the appellant respectfully asks this court to and hold that HP's vacation pay forfeiture policy violates 26 MRS section 626 and that the district court erred in finding in favor of the defendant on the quantum merit merit and unjust enrichment claim based on the finding that some sort of contract existed. The first issue that I'd like to address is this clawback provision for HP's vacation pay. And then next I'll get to the company's deliberately confusing bonus plan and how that was dealt with. So 26 MRS 626, the pertinent part of this statute provides that whenever the terms in employment, whenever the terms of employment include provisions for paid vacations, vacation pay on cessation of employment shall have the same status as wages earned. And here we have a policy where Matthew White, the appellant, earned 120 hours of vacation pay at the very start of the year. He was entitled to 120 hours to use it how he saw fit. At the time that he left employment in that year, he still had 88 hours of accrued vacation time left. And the court dismissed this theory because of some prior case law under Rowell and Richardson. And it's really important that we understand the holding in Rowell and Richardson and how these facts really differ from the facts here. In Rowell, it dealt with a number of employees who were not automatically entitled to the vacation pay that they were claiming. They sort of had to incrementally accrue that benefit. So it wasn't something that they were entitled to use right away. If they requested vacation time and they didn't have it accrued, that vacation time would be denied. So, you know, they were seeking more than they were entitled to at the time that they left employment. So that's really a significant distinction here because I think the language that was used in Rowell and in this case from Rowell was that entitlement to payment is governed solely by the terms of the employment. Once you're entitled, you are owed that vacation pay. So, you know, that's one way to distinguish this case. And then again, in Richardson, this was another case that the lower court relied on. Explain how you're entitled. I'm sorry, what was that? Is my audio coming? You're breaking up a little bit. The question was, could you explain the theory that your client was entitled to this, especially in light of the company policy? Absolutely. So, you know, every company has their own policy as to when you are entitled to take vacation pay. This company did not at any rate. So I think they had separate entitlement for salaried employees as opposed to hourly employees. They're hourly employees. It sounds like we're. Am I still breaking up? Go ahead. I guess the glaring question is, isn't there a qualification in the company policy, the qualification being that if you leave and haven't used it, you lose it? Why is that not a qualification like any other qualification? Because this statute specifically prohibits that once you are entitled to the vacation pay, that vacation pay has the same status as wages earned and owed. And, you know, there's a difference between the statute here and whether or not it's regulating, you know, how you accrue something or whether you're able to roll over something. But they're saying once you earn it, it's yours and it needs to be paid out. So counsel, I'm now confused. You're saying it doesn't matter what the company policy is because he has an absolute right under the statute. Is that the argument? I had thought your argument was that the company policy is ambiguous. And as to that ambiguity, that means he has the entitlement. So which is it? It is ambiguous, mostly because it provides an exception. Which of the two theories is it? Well, I think it's a little bit of both. I mean, I can't really choose either because I think that policy is a bit ambiguous as to, you know, they pick and choose employees that they do pay out these vacations. Okay, then the first proposition has to be wrong because if there is an unambiguous policy that he is not entitled to it, then there is no statutory right under Maine law, correct? Well, the difference here is that there is no ambiguity as to whether or not he was entitled to this vacation pay. And that's really the issue. If I understand, you're saying basically you're taking a position that Nebraska Supreme Court took with a similar statute. So your view is the word entitled in the statute. Right. So the word is separate from a clawback provision. Essentially, it was the clawback provision. So once the company says that you were entitled to use it at your discretion at that moment, it's locked in for purposes of the statute and any provision of company policy that would say they can then take it back upon your leaving is just inconsistent with the policies. Whereas a carryover or a future earning type thing, the entitlement never kicks in because it's never vested, even under the policy itself. That's the idea. Exactly. Very, very well worded. That's exactly what I'm trying to say here. Maine's never ruled on that question. Exactly, which is why Richardson and Rowell really don't apply here because it's just a completely separate issue. And I think using the reasoning from the lower court, he just kind of he missed the point here that this is a completely separate employment situation. Do you know if any states with similar statutes have held that those statutes don't prohibit clawback provisions? I know you cite some that do prohibit clawback provisions. Is there any state court that has allowed a clawback provision? I'm not aware of that because I wasn't specifically looking for that issue. I'm sorry, did you say it was time or was it not? Yes, it's time. Thank you. You have your rebuttal time reserved. Okay. Thank you. Attorney Quinlan, you can mute your device at this time. Attorney Caterin, if you could please unmute your device. And you may proceed. Good morning. May it please the court. My name is Melinda Caterin and I to express written policies which defeat White's claims for vacation pay and bonus compensation. As the district court concluded, there are no genuine disputes about these dispositive facts and as a result, summary judgment was properly granted. HP's vacation policy provides in relevant part. Employees are strongly encouraged to use all of their vacation each year. If you leave HP for any reason, either voluntarily or involuntarily, you will not receive pay in lieu of unused vacation. All unused vacation will be forfeited at the time of your separation. Here it is undisputed. Caterin, would it be fair to say that prior to his leaving, he was entitled to use the pay that's being taken away? He could have used his vacation time. Why wouldn't it be plausible to say that he was entitled to use it under the contract prior to him leaving? Because the policy specifically provides that if you don't use it during your employment, it will not be paid out upon termination and the main law court repeatedly said that is appropriate. Would he have been entitled to use it before he left? He could have used his vacation before he left and he voluntarily resigned, so he could have used his vacation before he left. He had that option. He was entitled to do that, right? He was entitled to use his vacation prior to his resignation. And that's not true of the plaintiffs in either of the main law court cases? That's not so. They were not entitled to use before they left? That's not so. In fact, it appears that both of those cases, they could have used them and especially in Richardson, he had accrued 178 hours of vacation and he could have taken it. At the time the case arose, he was not entitled under the contract to use the vacation time he was seeking to use prior to leaving because he had already forfeited that because it was carryover time, right? That's not correct. In Richardson, he could have used the time, but the provision in the contract said that he would only be paid out 30 hours of that upon termination. So it was in fact, it acted as a forfeiture. And in Rowell v. Jones and Vining, they specifically addressed the issue that is presented here. It says, we next turn to the plaintiff's second argument that because their vacation pay has the plan cannot be interpreted to divest plaintiffs of earned vacation benefits, we disagree. So they address that specific issue. Is there any state you're aware of that's upheld a clawback provision under a statute like this? I know Nebraska has not. Is there any state that with a similar statute to 626 has said a clawback provision is consistent with such a statute? I'm not certain of that, but there are only four states that I'm aware of that say that you have to that you're required to pay the accrued but unused vacation out upon termination of employment. And Maine is not one of those states. The Maine law court and the Department of Labor have repeatedly said that, and that's been the law for over 30 years. So the law court cases and the federal district court cases from the state of Maine have repeatedly said that. The question is whether a clawback provision presents just a different question. And the thing that's somewhat concerning particularly is like in the Nebraska case where it arises out of a termination rather than a departure. Because the risk, what the evident risk is, which is that you have earned a bunch of pay, you're entitled to use it, they now see you have all this pay accrued, and they fire you, and then you lose all that earned time. And under your account, the Maine law court would say that's fine. Correct. And there's a reason to be somewhat to have sanctioned that when neither of the Maine law court cases address that circumstance. Although the federal district court has in snow versus board, and they did address that precise issue. But what I would also say is that the purpose of vacation is for rest and relaxation is not to be a termination bonus, if you will. It's designed for people to take time off to, you know, re-energize and to come back to work and be more productive. It's not meant to be some type of a bonus. So it was there for people to use during their employment. And so for that reason, I would also argue against having to certify the question to the law because I think it's a question that has absolutely been decided on multiple occasions by the law court. And I'll move on to the next argument regarding the bonus. In White's complaint, he alleges that he's owed a $10,000 Cisco market share bonus for the last quarter of 2014. And the district court properly concluded that the bonus program was governed by its written terms and had a program and date of October 31st of 2014. Construing the record in the light most favorable to White, who had argued that the bonus program was non-discretionary, the district court found that a contract existed. The district court also noted that both parties had proceeded on the premise that the written terms of the market share bonus program were binding. As a result, the district court correctly concluded that White's unjust enrichment and quantum error claims were barred by the contract. In addition, on summary judgment, HP argued that the party shared a contractual employment relationship, including sales incentive compensation, and that the undisputed written terms of the market share bonus program ended on a specified date of October 31, 2014. HP further argued that the plain language of the market share bonus precludes payment. In his opposition, White completely failed to respond to HP's argument regarding the expiration of the bonus program and therefore waived any argument, any challenge to that argument. This failure alone was grounds for the dismissal of White's bonus claim. Regardless of whether the market share bonus is construed as a contract, White has failed to present evidence that could establish his entitlement to additional payment under theories of quantum error or unjust enrichment. White does not present any evidence that he performed any service or conferred any benefit on HP beyond what was already expected of him and what he was fully compensated to do. In addition, White has not demonstrated a reasonable expectation of additional compensation. White's only source of expectation for the bonus came from the written bonus program offered by HP. That written bonus program clearly and indisputably ended on October 31, 2014. White simply contends that he was confused by the operation of HP's bonus program. White's confusion cannot support a claim that he had a reasonable expectation of bonus compensation for the Cisco market share bonus during the last calendar quarter of 2014. Finally, White cannot demonstrate that HP had a concurrent intention to compensate White for his alleged services related to the reduction in Cisco's market share, nor did HP appreciate the benefit of the claim service. To the contrary, HP indisputably chose to end the market share bonus on October 31, 2014. HP's actions transparently communicated that it no longer considered changes in the Cisco market share as a benefit that it would appreciate. I'd like to just briefly go back to the vacation pay issue and just really highlight the fact that the accrual section of the personnel file, to the extent that we're looking at how the vacation pay was accrued, that was a completely separate section of the personnel policies from the forfeiture policy. It was completely separate. You accrue over here, you forfeit down here, and I think we can just separate the two, and once accrued, it cannot be forfeited under this callback. That was true, at least in the main retirement case also. The main retirement case, that was a year-to-year contract. That principal had a contract for one year. He was only entitled to employment for one year, and it was renewed year-to-year. It's a completely separate situation from this one. Why? Why does that follow? Because this was an employee at will, and each year, he continued his employment based on different employment expectations. As opposed to your next point. My next point, going to this quantum merit unjust enrichment theory based on the bonus program, it was an extremely confusing bonus program. We're really looking at everything after October 2014, because after that is when we get into the issue where the management are so confused by the bonus program and the terms of it that they tell their team they're still eligible for this bonus, and the team meets those unknowingly. They canceled the program, and nobody communicated that to the team until they came with the expectation of payment, and that payment wasn't there. Judge Hornby really glossed over a significant record, which led to the confusion. You have this management team at Hewlett-Packard who says, we need to change this plan. It's tedious. We require additional action. It will not follow systematically. It will affect who will be paid. There's emotion, hang-wringing, absolutely unclear terms. There's emails that cite bonuses not being paid, confusion in the calendar between fiscal year and calendar year, and the company should not be rewarded for having such a confusing bonus program that not only do their employees not understand what the terms of it are and what they're entitled to, the management and those executing and paying out the bonus plan don't understand the terms of it and are conflictually communicating to their employees that there is an expectation to be paid under this plan if they meet certain metrics. I want to just go back to the retirement point. Could you just help me? You explain what the difference between these two things is. If I understand your account of the retirement plan case that was before the Maine Law Court, you said it was an annual contract. The idea of the contract provided that you would lose the vacation time you accrued at the end of the contract, correct? I think it dealt with a rollover. From year to year, it allowed a rollover of certain vacation pay, but if you were to retire and not renew your contract, you were only going to get 30 hours for that year. Could you explain how that's different than this situation where they say you're entitled to it, but if you leave, you lose it? What's the difference between that and you're entitled to it, and if your contract ends, you only get 30 hours of it? I don't really understand the difference between those two things. Because if you look at what he was entitled to in that same year, it was significantly different than what he was claiming he was entitled to overall. I'm not sure exactly what the hours were. I think it was 180 hours he thought he was entitled to. A significant number of those hours had rolled over from previous years. Any hour over 30, as I read the Maine Law Court, they would say he couldn't get, even though he was entitled to it in that year. How is that different than your situation? Because that seems just like a forfeiture provision like this one. If you look at what he was entitled to for that year's contract, he was not entitled to 180 hours in that year. Those were previous hours that he had earned in separate years under separate contracts. But if you look under that one year's contract, he had something like 80 hours, and he had used other hours from other years. So, it's a different employment situation. It's a different employment agreement. Anything else? No, Your Honor. Thank you. Thank you all. We're going to take a break for three minutes. I'll let the clerk announce it. Thank you. That concludes the argument in this case. Attorney Quinlan and Attorney Katerin, you should disconnect from the hearing at this time.